# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ADAM HORTON,

    Petitioner,

vs.                                                                                                                                           CV 01-0974 JP/WWD

KEITH D. NORWOOD,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 **[Doc. 1]**, filed August 24, 2001.  Mr. Horton ("Horton") is currently incarcerated and is proceeding *pro se* and *in forma pauperis*.  He is confined pursuant to the Judgment, Sentence and Commitment of the Fifth Judicial District in the County of Chaves for his conviction on one count of Trafficking Cocaine, a Controlled Substance.

    2.  Horton was charged with two counts of Trafficking Cocaine (Counts 1 and 2) based on events that occurred on June 9, 1999 and June 14, 1999, respectively.  Horton was also charged with one count of Conspiracy to Traffic Cocaine (Count 3), which the State later dismissed.  A jury acquitted Horton as to Count 1 and found him guilty as to Count 2.  Horton was sentenced to nine years in custody, plus one year by reason of having been found to be an habitual offender. The court suspended six years of the underlying sentence, resulting in a total of four years in custody, to be followed by two years of parole and five years of probation.

**Factual Background**[1]

*Petitioner's testimony*

3. Horton testified that on June 9, 1999, an undercover agent (Agent Mora) and an unnamed confidential informant ("CI") (a friend of Horton's) came to Horton's house. According to Horton, the CI asked Horton to obtain some drugs for the agent. Horton refused several times, stating that he did not do drugs anymore. The CI followed Horton into the kitchen and the living room, begging and promising favors, including an offer to provide food for Horton's children.[2] Finally, Horton agreed to make the buy this one time. Horton obtained cocaine for Agent Mora at another address.

4. Rose Salazar, who lived with Horton, testified that Agent Mora had also asked her to obtain drugs for him and that she had refused. Ms. Salazar said that she was in the kitchen on June 9, 1999 when Agent Mora and the CI arrived. Ms. Salazar's testimony confirmed Horton's version of events of June 9, 1999.

5. On June 14, 1999, Agent Mora knocked on Horton's door and asked for more drugs. Horton testified that Agent Mora would not leave when he refused to help him. Agent Mora promised to give Horton forty ($40.00) dollars if Horton would make a drug buy for him. Horton finally agreed to make the buy. Following the buy, Agent Mora gave Horton twenty ($20.00), explaining that that was all he had. Horton testified that he would not have obtained the drugs if he had not been offered food and money.

---

[1] These facts are from the Docketing Statement, which refers to the state record proper.

[2] Horton and Salazar have six children. The CI apparently owned a restaurant.

*Agent Mora's testimony*

6. Agent Mora testified that on June 9, 1999, he and the CI went to Horton's home. Agent Mora asked if Horton could "hook him up" with some cocaine and Horton said he could. Horton did not initially refuse to make the drug buy. Agent Mora denied that the CI ever left the room with Horton. After obtaining the drugs, Horton told Agent Mora to "come back again."

7. On June 14, 1999, Agent Mora returned to Horton's house. Agent Mora told Horton he needed some more drugs and Horton agreed to help. Agent Mora denied offering Horton forty ($40.00) dollars. Agent Mora conceded offering Horton twenty ($20.00) dollars after the transaction was completed in order to gain Horton's trust.

**Petitioner's Argument**

8. Horton raises three grounds in his petition:

(1) whether Petitioner's purchase of cocaine on June 14, 1999 was a continuation of his conduct involving the purchase of cocaine on June 9, 1999;

(2) whether Petitioner was denied a fair trial because the confidential informant did not testify at trial;

(3) whether Petitioner received ineffective assistance of counsel due to counsel's failure to request a mistrial based on comments made by the prosecution referring to the lack of testimony from the confidential informant.

9. As Respondent notes, all of the grounds raised in the federal petition have been addressed and dismissed by the state court. A federal court is authorized to grant a writ of habeas corpus to a person in custody pursuant to a state-court judgment, but only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application

3

of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. § 28 U.S.C. 2254(d).[3]

**First Ground**

10. Petitioner appears to argue that because he was induced by the CI to buy cocaine for Agent Mora on June 9, 1999, his later purchase of cocaine for the same agent on June 14, 1999 should be considered a continuation of the earlier conduct. Petitioner does not state how this claim constitutes a violation of federal law. However, I find this claim to be both procedurally barred and lacking in merit as a due process claim.

11. This Court will not consider issues on habeas review "that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman v.Thompson, 501 U.S. 722, 749-50 (1991)).

12. The state appeals court determined that because Horton did not request a jury instruction on continuing entrapment, he failed to preserve this issue for appeal. Generally, "[o]bjections to instructions cannot be raised for the first time on appeal where the defendant neither objected to the instructions at trial nor tendered any written request." Mem. Opinion at 2, Ex. E, attached to Respondent's Answer (quoting State v. Noble, 90 N.M. 250, 253, 849 P.2d 1073, 1075 (Ct. App. 1992)). The state court determined that this claim was defaulted, based on an independent and adequate state ground. Moreover, Petitioner has not demonstrated cause and

---

[3] Because the state court fully articulated its reasoning for denying postconviction relief on each of the grounds raised by Petitioner, a review of the entire trial transcript was not necessary.

prejudice or a fundamental miscarriage of justice. Consequently, I find this claim should be dismissed because it is procedurally barred.

13. Furthermore, this issue lacks merit as a due process claim. The state appeals court pointed out that Horton "requested and was granted jury instructions on entrapment on both charges of trafficking cocaine," and also noted that "New Mexico has no uniform jury instruction on continuing entrapment." Mem. Opinion at 4. Petitioner has failed to show how the absence of a jury instruction setting forth "a new defense not yet adopted under New Mexico law" rendered his trial fundamentally unfair. Id. This claim should be dismissed with prejudice.

**Second Ground**

14. Petitioner contends that he was denied a fair trial because the confidential informant did not testify at trial. Specifically, Horton alleges that the informant "was not allowed to testify . . . . and only the Confidential Informant could have told the jury detail [sic] of the first occassion [sic]." Petitioner's Application at 7.

15. The court of appeals found that Horton knew the identity of the confidential informant. See Proposed Summary Disposition ("PSD") at 3, Ex. C, attached to Respondent's Answer. Thus, Horton "could have subpoenaed the informant to testify at trial if he had believed his testimony would have been helpful to his defense." Id. Indeed, Horton points to no evidence that he ever attempted to subpoena the confidential informant to testify.

16. Moreover, the court failed to discern how Horton had been prejudiced by the absence of the informant's testimony, because "Defendant was acquitted on the charge resulting from the drug transaction that the informant had helped facilitate." PFD at 4. The court further noted that the police officers and Horton had "testified at trial that the informant was not involved at all in

the second transaction" that took place on June 14, 1999.  Id.  In his petition, Horton confirmed that the informant could provide details only with respect to the events that took place on June 9, 1999.

17. I find that this issue has no merit as a due process claim.  The state appellate court's finding that Horton was not prejudiced was not an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented.  Petitioner has failed to show that the absence of the informant's testimony rendered his trial fundamentally unfair.  This claim should be dismissed with prejudice.

**Third Ground**

18. Petitioner contends that he was denied a fair trial due to ineffective assistance of counsel.  Specifically, Horton asserts that trial counsel was ineffective for failing to request a mistrial when the State referred to the fact that the CI did not testify.

19. The allegation that trial counsel was ineffective is measured by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under this analytical approach, a petitioner must demonstrate both that his trial attorney's performance fell below an objective standard of reasonableness and that his defense was prejudiced by the deficient representation.  Id. at 687.

20. The state appeals court found that trial counsel's failure to ask for a mistrial or for the jury verdict to be set aside may have been a strategic decision.  Mem. Opinion at 3.  Moreover, the state court noted that "[e]ven assuming that the prosecutor should not have referred to the fact that the [CI] did not testify . . . , the jury appears to have believed [Horton's testimony] that the informant offered him food for his children in return for buying cocaine for the agent."  PSD at 6.  The jury acquitted Horton on the first count, based on the June 9, 1999 transaction in which

6

the CI was involved. Petitioner does not allege that the CI could provide any relevant testimony with respect to the second count, based on the June 14, 1999 transaction. Thus, Petitioner has not demonstrated that a failure to move for a mistrial prejudiced his defense. See PSD at 5-6 (citing State v. Hernandez, 115 N.M. 6, 17, 846 P.2d 312, 323 (1993)) (explaining that Horton has the burden of showing that "there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different").

21. The state appellate court's finding that counsel's failure to move for a mistrial was not ineffective assistance was not an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented. This claim should be dismissed with prejudice.

**Recommendation**

I recommend that Petitioner's application for Writ of Habeas Corpus be DENIED and that this cause be DISMISSED WITH PREJUDICE. Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
UNITED STATES MAGISTRATE JUDGE